**Scott A. MASON, Plaintiff,**

v.

**State of ARIZONA, a body politic, et al., Defendant.**

**No. CIV–01–2439–PHX–ROS.**

United States District Court, D. Arizona.

March 28, 2003.

Scott A. Mason, Rhinelander, WI, pro se.

James Nelson Smith, Jr., Office of Atty. Gen., Liability Management Section, Phoenix, AZ, for State of Arizona, Arizona State Chiropractic Bd., N. Edwin Weathersby, Chery A. Weathersby, Craig Seitz, Sharon A. Seitz, James J. Badge, Deborah Carlson Badge, Norma H. Steinbrenner, Gerhard Steinbrenner, Sandra L. Verlotta, John Verlotta, Lee Miller, Camilla A. Miller, Patrice A. Pritzl, Matthew Neubert.

Lloyd James Andrews, Bryan Nathan Andrews, Bryan Nathan Sandler, Swenson Storer Andrews & Frazelle, PC, Phoenix, AZ, for Daniel E. Gurka.

William H. Sandweg, III, Corrin Koehler Koehler, Robbins & Green PA, Phoenix, AZ, for Edward W. Gurka, Elizabeth E. Gurka.

## ORDER

SILVER, District Judge.

This action arose from two patient complaints filed with the Arizona State Board of Chiropractic Examiners ("Board") against Plaintiff. As a result of these complaints, the Board revoked Plaintiff's Arizona license to practice chiropractic medicine. Subsequently, pro se Plaintiff filed this action against the State of Arizona, the Board, the individual members of the Board and their spouses, and his two patients. Plaintiff alleges five claims: (1) violation of 42 U.S.C. § 1983; (2) malicious prosecution; (3) defamation; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. The various Defendants responded by filing Motions to Dismiss. For the reasons stated below, the Court will grant dismissal for all Defendants on Plaintiff's federal claim and decline to exercise supplemental jurisdiction on the remaining state law claims.

## BACKGROUND

Plaintiff filed a Complaint on December 14, 2001 against the following Defendants: (1) the State of Arizona ("State"); (2) the Board; (3) each of the individual members of the Board, its Executive Director, and their spouses ("State Defendants"); (4) Daniel E. Gurka, a former patient of Plaintiff ("Daniel"); and (5) Edward W. Gurka, a former patient of Plaintiff, and his spouse ("Edward").

Plaintiff and each of the Defendants reside in Arizona. (Complaint ¶¶ 5–16) (Doc. # 1). Plaintiff, invoking federal question and supplemental jurisdiction, alleges the following causes of action: (1) violation of 42 U.S.C. § 1983; (2) malicious prosecution; (3) defamation; (4) intentional infliction of emotional distress ("IIED"); and (5) negligent infliction of emotional distress ("NIED"). Plaintiff requests relief in the form of injunctions, reinstatement, and damages. (Complaint pp. 26–28) (Doc. # 1). Defendants respond by filing various Motions to Dismiss.

### A. Daniel's Motion to Dismiss

Plaintiff alleges four state causes of action against Daniel. On March 21, 2002, Daniel filed a Motion to Dismiss. (Doc. # 41). In this Motion, Daniel argues: (1) all claims against him must be dismissed for lack of supplemental jurisdiction; (2) the statute of limitations bars Plaintiff's defamation claims; (3) absolute and/or qualified immunity bars Plaintiff's defamation claims; (4) Plaintiff fails to allege a cause of action for IIED; and (5) Plaintiff fails to allege a cause of action for NIED.

On June 3, 2002, Plaintiff filed a Response. (Doc. # 55). Plaintiff "recognizes that an action for defamation accrues and statute of limitations begins to run upon publication," but nevertheless asks the Court to "toll" the statute of limitations in his case. (Response to Daniel pp. 2–3) (Doc. # 55). Plaintiff also argues that, at most, a qualified privilege protects Plaintiff, and requests "additional discovery [be] undertaken" to determine if Daniel violated this privilege. *Id.* at pp. 3–4. Finally, Plaintiff asks leave of the Court to amend his pleadings to properly state a cause of action for the IIED and NIED claims. *Id.* at pp. 4–5. Daniel filed a Reply on June 6, 2002 that simply restated his prior arguments. (Doc. # 58).

### B. The State's Motion to Dismiss

The State filed its Motion to Dismiss on March 26, 2002. (Doc. # 42). It argued that: (1) the Eleventh Amendment bars all claims; (2) *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), bars the § 1983 claim; (3) absolute and/or qualified immunity bars all claims; (4) failure to comply with Arizona notice of claims statute A.R.S. § 12–821.01 bars all state claims; (5) statute of limitation A.R.S. § 12–821 bars all state claims; and (6) Plaintiff fails to allege a cause of action under § 1983. Moreover, the State also joins Daniel's Motion to Dismiss in part.

Plaintiff responded on June 3, 2002. (Doc. # 57). In the Response, Plaintiff concedes that *Will* bars his § 1983 claim against the State. (Response to State p. 4) (Doc. # 57). Furthermore, Plaintiff concedes that both (1) the notice of claims and (2) statute of limitations bars all of his state law claims against the State. *Id* at pp. 5–6.

The State filed a Reply on June 13, 2002. (Doc. # 60). Recognizing that Plaintiff conceded that all of his claims against the State fail, the State requests dismissal, which will be granted.

### C. State Defendants' and Board's Motion to Dismiss

The State Defendants and Board filed a joint Motion to Dismiss on March 29, 2002.

(Doc. # 43). They requested dismissal because: (1) the Eleventh Amendment bars all claims against the Board and all official capacity claims against the State Defendants; (2) *Will* bars the § 1983 claim against the Board and all official capacity claims against the State Defendants; (3) absolute immunity bars all claims; (4) qualified immunity bars all claims; (5) the *Rooker–Feldman* doctrine bars Plaintiff's attempts to re-litigate the decisions of the state's superior court, and *res judicata* and collateral estoppel bar Plaintiff's attempt to relitigate the revocation of his license; (6) failure to comply with Arizona's notice of claim statute bars all state law claims; (7) the statute of limitations bars all state law claims; (8) failure to exhaust administrative remedies bars all state law claims; (9) the Board is a non-jural state entity not subject to suit; and (10) Plaintiff fails to allege a cause of action under § 1983. Additionally, both the State Defendants and Board partially join Daniel's Motion to Dismiss (Doc. # 41).

Plaintiff filed a Response on June 3, 2002. (Doc. # 56). Plaintiff concedes that *Will* bars his § 1983 claim against the Board. (Response to State Def. and Board p. 5) (Doc. # 56). Plaintiff also concedes that both (1) the notice of claims and (2) statute of limitations bars all of his state law claims only against State Defendant Pritzel. *Id.* at pp. 9–10. However, Plaintiff disputes the rest of Defendants arguments. On June 13, 2002, Defendants filed a Reply. (Doc. # 59).

**D.  Edward's Motion to Dismiss**

Edward filed his Motion to Dismiss on April 1, 2002. (Doc. # 44). He argues that: (1) Plaintiff fails to allege a malicious prosecution cause of action; (2) the statute of limitations bars the defamation claims; (3) Plaintiff fails to allege an IIED cause of action; and (4) Plaintiff fails to allege a NIED cause of action. Moreover, Edward partially joins Daniel's Motion to Dismiss (Doc. # 41).

Plaintiff responds by conceding that his malicious prosecution claim fails. Additionally, Plaintiff "recognizes that an action for defamation accrues and [the] statute of limitations begins to run upon publication," but nevertheless asks the Court to "toll" the statute of limitations in his case. (Response to Edward pp. 2–3) (Doc. # 54). Finally, Plaintiff asks leave of the Court to amend his pleadings to properly state a cause of action for the IIED and NIED claims. *Id.* at pp. 3–5. Edward filed a Reply on June 20, 2002 (Doc. # 61) that simply joins Daniel's Reply (Doc. # 58).

**DISCUSSION**

This is a federal question case with state causes of action included under supplemental jurisdiction. The parties agree that Arizona law applies to the state causes of action. Each of the Motions to Dismiss request dismissal pursuant to both Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

**A.  Legal Standards**

**1.  Rule 12(b)(6)**

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).[1] "The federal

---

1.  This standard, " 'often cited in Rule 12(b)(6) motions, ... is equally applicable in [Rule 12(b)(1)] motions challenging subject matter jurisdiction when such jurisdiction may be contingent upon factual matters in dispute.' " *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (citation omitted). "If a dis-

rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though "'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* Finally, it is well established that pro se complaints, "however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quotation marks omitted); *see Ortez v. Wash. County*, 88 F.3d 804, 807 (9th Cir.1996) ("Because Ortez is a pro se litigant, we must construe liberally his inartful pleading[.]") (citation omitted). "In civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988); *see Morrison v. Hall*, 261 F.3d 896, 899 n. 2 (9th Cir.2001) (citing *Karim–Panahi*, 839 F.2d at 623; *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir.1999) (citing *Karim–Panahi*, 839 F.2d at 623).

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *see Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649–50 (9th Cir.1984); *W. Mining Council*, 643 F.2d at 624.

---

trict court cannot determine jurisdiction on the basis of a threshold inquiry analogous to a 12(b)(6) motion, the court may assume jurisdiction and go on to determine the relevant jurisdictional facts 'on either a motion going to the merits or at trial.'" *Id.* at 1178 (citation omitted). A Rule 12(b)(1) motion to dismiss "for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). The defense of lack of subject matter jurisdiction may be raised at any time by the parties. Fed.R.Civ.P. 12(h)(3).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); *see Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001). Indeed, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir.1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993)).

" 'However, material which is properly submitted *as part of the complaint* may be considered' on a motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (quoting *Hal Roach Studios*, 896 F.2d at 1555 n. 19) (emphasis in original); *see Federal Civil Procedure Before Trial* § 9:212, at 9–54. Similarly, a district court may consider any documents referred to or "whose contents are alleged in a complaint and whose authenticity no party questions." *Id.* at 454; *see Lee*, 250 F.3d at 688 (citing *Parrino v.*

*FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.), *cert. denied*, 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423 (1998)); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001) (citing *Branch*, 14 F.3d at 453–54); *see also Robinson v. Fred Meyers Stores, Inc.*, 184 F.Supp.2d 968, 972 (D.Ariz.2002); *see Federal Civil Procedure Before Trial* § 9:212.1, at 9–54. In addition, "even if the plaintiff's complaint does not explicitly refer to" a document, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies" because this prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]" *Parrino*, 146 F.3d at 705–06. "Such consideration does 'not convert the motion to dismiss into a motion for summary judgment.' " *Branch*, 14 F.3d at 454 (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)); *see Parrino*, 146 F.3d at 705–06; *Parks Sch. of Bus.*, 51 F.3d at 1484; *cf.* Fed. Rs. Civ. P. 12(b), 56.

At this stage of the litigation, however, the district court must resolve any ambiguities in the considered documents in the plaintiff's favor. *See Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995); *see also Smith*, 84 F.3d at 1217; *Miree*, 433 U.S. at 27 n. 2, 97 S.Ct. 2490.; *Federal Civil Procedure Before Trial* § 9:212.1c, at 9–55.

## 2. Rule 12(b)(1)

■ "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir.1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *see Kokkonen v.*

*Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Fenton v. Freedman,* 748 F.2d 1358, 1359, n. 1 (9th Cir.1984); *see also* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:77, at 9–17 (2002). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Kokkonen,* 114 S.Ct. at 1675; *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. *See* Fed.R.Civ.P. 12(h)(3). A Rule 12(b)(1) motion to dismiss "for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.,* 594 F.2d 730, 733 (9th Cir.1979); *see Federal Civil Procedure Before Trial* § 9:78, at 9–18.

■ In resolving the former motion, a "facial attack" under Rule 12(b)(1), the district court must accept the allegations of the complaint as true. *See Federal Civil Procedure Before Trial* § 9:84, at 9–20 (citing *Valdez v. United States,* 837 F.Supp. 1065, 1067 (E.D.Cal.1993), *aff'd,* (9th Cir.1995)). Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction. *Id.* § 9:84a, at 9–20.

■ In resolving a "speaking motion" or "factual attack" under Rule 12(b)(1), the court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits [of the] case." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987); *see Greene v. United*

*States,* 207 F.Supp.2d 1113, 1119 (E.D.Cal. 2002) (citing *Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir.1987)). Instead, "[t]he court may view evidence outside the record, and no presumptive truthfulness is due to the complaint's allegations that bear on the subject matter [jurisdiction] of the court." *Greene,* 207 F.Supp.2d at 1119 (citing *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983)); *see Roberts,* 812 F.2d at 1177; *Valdez,* 837 F.Supp. at 1067; *see also Federal Civil Procedure Before Trial* § 9:86, at 9–21. Indeed, "the district court is[ ] 'free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary.'" *Id.* (quoting *Augustine,* 704 F.2d at 1077); *see Federal Civil Procedure Before Trial* § 9:85, at 9–20.

■ However, the court must hold an evidentiary hearing before resolving issues of credibility or genuinely disputed material facts. *See Federal Civil Procedure Before Trial* § 9:85.1, at 9–21.[2] If the court resolves a Rule 12(b)(1) motion on declarations alone without an evidentiary hearing, it must accept the factual allegations of the complaint as true. *See id.* (citing *McLachlan v. Bell,* 261 F.3d 908, 909 (9th Cir. 2001)); *Greene,* 207 F.Supp.2d at 1119 ("[I]n the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter [jurisdiction] are viewed in the light most favorable to the opposing party.") (citing *Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1996)). Similarly, without an evidentiary hearing, genuinely "disputed facts related to subject matter jurisdiction should be treated in the same way as one would adjudicate a summary judgment motion." *Greene,* 207

---

2. The court has the discretion to order an evidentiary hearing before trial or postpone the motion until trial. *See id.*

F.Supp.2d at 1119 (citing *Dreier*, 106 F.3d at 847).

## B. Analysis

Because the outcome of the Court's decision on the Defendants' Motions to Dismiss Plaintiff's federal question § 1983 claim impacts the Court's resolution of Plaintiff's remaining state law claims, the Court first turns to this issue.

## 1. Federal Question § 1983 Claim

Plaintiff's Complaint alleges a § 1983 action against: (1) the State; (2) the Board; and (3) the State Defendants, both individually and in their official capacities.

## a. Plaintiff Concedes No Claim Exists Against the State

In his Response to the State's Motion to Dismiss, Plaintiff wrote that he "concedes that the United States Supreme Court decision in *Will v. Michigan Department of State Police* bars Plaintiff's federal constitutional claim against the State of Arizona." (Response to State at p. 4) (Doc. # 57). As stated previously, construing this concession as Plaintiff's stipulation to dismiss on the § 1983 count, it will be dismissed.

## b. Plaintiff Concedes No Claim Exists Against the Board

In his Response to the Board and State Defendants' Motion to Dismiss, Plaintiff wrote that "the United States Supreme Court decision in *Will v. Michigan* ...

bars Plaintiff's federal constitutional claims against the State Defendant Board only." (Response to State Defendants at p. 5) (Doc. # 56). As previously stated, construing this concession as Plaintiff's stipulation to dismiss the § 1983 count, it will be dismissed.

## c. Plaintiff Fails to State a Claim Against the State Defendants

Plaintiff alleges § 1983 actions against the State Defendants both in their individual and official capacity. Neither claim survives the Motion to Dismiss.

## (1) The Eleventh Amendment Bars the Official Capacity Claims Requesting Retrospective Relief [3]

When suing an individual in his official capacity pursuant to § 1983, the Eleventh Amendment provides sovereign immunity protection. The Amendment provides:

> The Judicial power of the United States shall not be construed as to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. In 1934, the Supreme Court stated that this language fails to be dispositive because behind these "words" exist common-law "postulates" of sovereign immunity "which limit and control." *Monaco v. Mississippi,* 292 U.S.

---

**3.** The Court notes that federal courts should avoid reaching the merits of a constitutional issue when the case may be decided on other grounds. However, in this case, the Court turns first to the constitutional issue of sovereign immunity because it presents a controlling jurisdictional question that antecedes State Defendants' other arguments for dismissal. *See In re: Jackson,* 184 F.3d 1046, 1048 (9th Cir.1999) (stating that courts must resolved Eleventh Amendment jurisdictional issues prior to reaching the merits); *Bell-*

*South Telecommunications, Inc., v. North Carolina Utils. Comm'n,* 240 F.3d 270, 275–76 (4th Cir.2001); *Fent v. Oklahoma Water Resources Bd.,* 235 F.3d 553, 557–59 (10th Cir. 2000); *United States v. Texas Tech Univ.,* 171 F.3d 279, 285–94 (5th Cir.1999). *But see Calderon v. Ashmus,* 523 U.S. 740, 745 n. 2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (implying that Eleventh Amendment matters are excluded from Article III issues that must be addressed before the merits).

313, 322, 54 S.Ct. 745, 78 L.Ed. 1282 (1934); *see also Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ("this Court has drawn upon principles of sovereign immunity").

■ Applying this concept, in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court established that, despite its language, the Amendment applies to federal court actions brought by citizens of the defendant state. Moreover, the Amendment applies to suits against state agencies and state officials sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–2, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Finally, despite specifically stating that it bars suits "in law or equity," the Supreme Court holds that the Amendment fails to bar federal court prospective relief that requires state officials to comply with federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ To achieve the *Young* holding, the Supreme Court created a legal fiction. The Court reasoned that, because any authority given by the states to their officials must be exercised consistently with the commands of the federal Constitution, a state official who acts in violation of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 160, 28 S.Ct. 441. Therefore, prospective relief that requires a state official to comply with the federal Constitution operates against the official in her personal capacity and falls outside the scope of the Amendment, which affords sovereign immunity to states but not individuals. *See also Papasan v. Allain,* 478 U.S. 265, 276–79, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (plurality opinion) (*Young* "was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity"); *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102–05, 104 S.Ct. 900.

*Young* applies whenever " 'the underlying authorization upon which the named official acts is asserted to be illegal' under federal law, the 'violation of federal law by [the] state official is ongoing' [or threatened], and the relief sought will end the violation.' " *Ezzell v. Board of Regents,* 838 F.2d 1569, 1571 (11th Cir.1988) (quoting *Papasan,* 478 U.S. at 277, 106 S.Ct. 2932).

*Young* creates a dichotomy, immunizing state officials from retrospective relief, but not prospective relief. The Supreme Court recognizes that the distinction between these two forms of relief is not always the difference between "day and night." *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, resolution of an Eleventh Amendment defense in a federal court § 1983 suit requires a determination of whether the relief requested falls on the prohibited, retrospective side or on the permissible *Young,* prospective side.

■ The party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Hyland v. Wonder,* 117 F.3d 405, 413 (9th Cir.1997) (quoting *ITSI TV Prods., Inc. v. Agricultural Ass'ns,* 3 F.3d 1289, 1291 (9th Cir.1993)). Here, the Governor appoints Board members, who are paid by the State Treasury. A.R.S. § 32–901. Moreover, the Board appoints the Executive Director, who also receives a salary from the State Treasury. A.R.S. § 32–905. Therefore, State Defendants meet their burden of proving that

they constitute state officials. Having established this, the Court now turns to the applicability of immunity to Plaintiff's claim for relief.

Here, Plaintiff requests that (1) damages be awarded; (2) State Defendants be "permanently enjoined from engaging in" the alleged unlawful conduct described in his Complaint; and (3) reinstatement of his license. The first two forms of requested relief constitute prohibited, retrospective relief. However, reinstatement constitutes prospective relief.

### (a) Retrospective Relief Request Barred

■ First, damages for the alleged wrongs committed against Plaintiff constitute retrospective relief designed to compensate Plaintiff for past harm. *See, e.g., Papasan,* 478 U.S. at 278, 106 S.Ct. 2932 (holding that the Eleventh Amendment bars federal court relief payable out of the state treasury designed to compensate for past harm); *Edelman,* 415 U.S. at 668, 94 S.Ct. 1347 (holding Eleventh Amendment provided immunity against a federal court award of retroactive welfare benefits payable from the state treasury).

■ Second, Plaintiff's Complaint only describes completed, allegedly illegal conduct engaged in by the State Defendants personally directed toward Plaintiff. Plaintiff makes no allegations that State Defendants are engaged in any ongoing actions that are illegal under federal law or that there is a prospect that they will undertake such activities in the future against him. Without such a showing, Plaintiff simply asks to "enjoin" past, completed actions. This fails to constitute prospective relief under *Young. See, e.g., Papasan,* 478 U.S. at 277–78, 106 S.Ct. 2932 ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . .").

### (b) Prospective Request for Reinstatement Not Barred

■ While no Ninth Circuit case specifically finds a request for reinstatement of a medical professional's license to be prospective relief, the Ninth Circuit does hold requests for reinstatement of employment to be prospective relief.

In *Doe v. Lawrence Livermore Nat. Laboratory,* 131 F.3d 836 (9th Cir.1997), the Ninth Circuit held that reinstatement of employment constituted prospective injunctive relief. *Id.* at 839–842.

The goal of reinstatement ... is not compensatory; rather it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements. [Plaintiff's] alleged wrongful discharge is a continuing violation; as long as the state official keeps him out of his allegedly tenured position the official acts in what is claimed to be derogation of [Plaintiff's] constitutional rights.

*Id.* at 841 (quoting *Elliott v. Hinds,* 786 F.2d 298, 302 (7th Cir.1986)). The court went on to explain that reinstatement simply prevents "prospective violation of [Plaintiff's] rights which would result from denying him employment in the future." *Id.; see also, Olson v. Morris,* 188 F.3d 1083 (9th Cir.1999) (implying that immunity fails to bar a § 1983 claim for reinstatement of psychologist license after state board revocation by affirming lower court dismissal based on res judicata instead of immunity).

Applying this rationale to Plaintiff's request for reinstatement of his chiropractic license establishes that this request constitutes prospective relief, which under *Young,* is not barred by the Eleventh Amendment. Plaintiff seeks only rein-

statement of his license. This request fails to compensate Plaintiff for any past harm. Instead, any funds obtained by Plaintiff after reinstatement derive from work completed well after the alleged violations. Thus, while reinstatement relates to his alleged past violations, it fails to constitute relief solely for these past violations. Therefore, this claim for relief against the State Defendants in their official capacities survives Eleventh Amendment scrutiny.

**(2) Immunity Bars the Individual Claims**

■ The Eleventh Amendment applies only when a claimant seeks to establish liability that operates in substance against state governments. Therefore, it fails to apply when a claimant seeks to recover damages against a state public official in his personal capacity. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, such individual claims against state officials may "hamper" performance of the public duties of these officials. *Hafer,* 502 U.S. at 31, 112 S.Ct. 358. Consequently, the Supreme Court turns to "personal immunity jurisprudence" to address this concern. *Id.*

Public officials defeat individual § 1983 claims by asserting common-law immunity as an affirmative defense. While the language of § 1983 fails to provide for any immunities, the Supreme Court consistently takes the position that, in enacting the original version of § 1983 in 1871, Congress did not intend "to abolish wholesale" all common-law immunities. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *see also Will,* 491 U.S. at 67, 109 S.Ct. 2304 ("in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law").

■ Therefore, when an absolute immunity existed in 1871, and proves compatible with the purposes and policies of § 1983, it is incorporated into § 1983. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

However, in defining qualified immunities, the Supreme Court "diverge[s] to a substantial degree from the historical standards." *Wyatt v. Cole,* 504 U.S. 158, 170, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (Kennedy, J., concurring). The Supreme Court explains:

> Although it is true that we have observed that our determinations as to the scope of official immunity are made in the light of the common-law tradition, we have never suggested that the precise contours of official immunity can and should be slavishly derived from the often arcane rules of the common-law. This notion is plainly contradicted by *Harlow [v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ], where the Court completely reformulated qualified immunity along principles not at all embodied in the common-law, replacing the inquiry into subjective malice so frequently required at common-law with an objective inquiry into the legal reasonableness of the official actions.

*Anderson v. Creighton,* 483 U.S. 635, 644–45, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

Whether and to what extent a § 1983 defendant benefits from protection by immunity from liability involves a question of federal law. *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Kimes v. Stone,* 84 F.3d 1121, 1126–28 (9th Cir.1996). The "immunity question involves the construction of a federal statute," therefore, state law immunity defenses and privileges cannot control a

§ 1983 claim. *Wood v. Strickland,* 420 U.S. 308, 314, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).[4]

Whether a public official claims an absolute or qualified immunity depends upon the nature of the function she carried out. *See, e.g., Antoine v. Byers & Anderson,* 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Absolute immunity provides protection from personal liability even for clearly erroneous or malicious behavior. Qualified immunity protects from liability as long as the official did not contravene clearly established federal law. *Anderson,* 483 U.S. 635, 107 S.Ct. 3034; *Harlow,* 457 U.S. 800, 102 S.Ct. 2727.

The Supreme Court regards qualified immunity as the norm because "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Court "has generally been quite sparing in its recognition of claims to absolute official immunity." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). It engages a presumption "that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns,* 500 U.S. at 486–87, 111 S.Ct. 1934. Therefore, an official claiming absolute immunity bears the burden of showing that such immunity "is

justified by overriding considerations of public policy." *Forrester,* 484 U.S. at 224, 108 S.Ct. 538.

## (a) Absolute Immunity Applies to the State Defendants

In some cases, administrative hearing officers may assert absolute quasi-judicial immunity. The applicability of this immunity depends primarily upon whether (1) the employed process contains procedural safeguards that sufficiently resemble those afforded by judicial process, and (2) the decision-maker exists sufficiently independent and free of political influence. *Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).[5]

Applying the *Butz* rule, the Ninth Circuit held that absolute immunity protects state medical board members' decisions to revoke a doctor's medical license. *Mishler v. Clift,* 191 F.3d 998 (9th Cir.1999). In *Mishler,* the Court conducted an absolute immunity analysis using several factors that the Supreme Court articulated in *Butz.*

> These factors—relating to the purpose of § 1983 immunity—include: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

---

4. Plaintiff erroneously argues that state law controls and therefore defeats State Defendants' claim of absolute immunity. (Response to State Defendants pp. 5–7) (Doc. # 56).

5. While *Butz* fails to be a § 1983 claim, it involves claims against federal officers, and

the Supreme Court deemed "it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution ...." *Id.* at 504, 98 S.Ct. 2894.

*Id.* at 1003 (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). *See also Romano v. Bible,* 169 F.3d 1182, 1186–88 (9th Cir. 1999) (holding that absolute immunity protects members of Nevada Gaming Control Board in investigating and initiating proceedings, and members of the Nevada Gaming Commission in adjudicating disciplinary proceedings); *Buckles v. King County,* 191 F.3d 1127 (9th Cir.1999) (holding that absolute immunity protects members of state zoning board for zoning decisions).

Moreover, numerous lower federal courts also hold that state health professionals' board hearing officers who are insulated from political pressure and exercise independent quasi-judicial power enjoy absolute judicial immunity. *See, e.g., O'Neal v. Mississippi Board of Nursing,* 113 F.3d 62, 66 (5th Cir.1997) (nursing board members); *Alexander v. Margolis,* 921 F.Supp. 482 (W.D.Mich. 1995), *aff'd,* 987 F.2d 1341, 1996 WL 583365 (6th Cir.1996) (medical board members); *Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698 (1st Cir.1995) (same); *Watts v. Burkhart,* 978 F.2d 269 (6th Cir.1992) (en banc) (same); *Bettencourt v. Board of Registration,* 904 F.2d 772 (1st Cir.1990) (same); *Horwitz v. State Bd. of Medical Examiners,* 822 F.2d 1508 (10th Cir.1987) (same); *Howard v. Miller,* 870 F.Supp. 340 (N.D.Ga.1994) (same); *Ivancie v. State Bd. of Dental Examiners,* 678 F.Supp. 1496 (D.Colo.1988) (dental board members); *State Board of Chiropractic Examiners v. Stjernholm,* 935 P.2d 959 (Colo.1997) (chiropractic board members)

Furthermore, applying *Butz,* numerous courts hold that various staff members associated with state health professional boards also receive absolute immunity for their actions connected to a board's disciplinary proceedings. *See, e.g., O'Neal,* 113 F.3d 62 (executive director); *Wang,* 55 F.3d 698 (professional staff); *Bettencourt,* 904 F.2d 772 (staff members); *Howard,* 870 F.Supp. 340 (executive director and secretary); *Connolly v. Beckett,* 863 F.Supp. 1379 (D.Colo.1994) (program administrator); *Kutilek v. Gannon,* 766 F.Supp. 967 (D.Kan.1991) (executive director and medical consultants).

■ Here, all Plaintiff's allegations and claims arose from an administrative enforcement proceeding by the Board, and the subsequent Board ordered revocation of Plaintiff's chiropractic license. This administrative enforcement proceeding, like the other health professional board proceedings cited, satisfies both of the key factors required by *Butz* to confer absolute immunity on the State Defendants.

First, the Board's proceedings contain procedural safeguards that sufficiently resemble those afforded by judicial process. Arizona statutes empower the Board to: (1) enforce the licensing of the chiropractic profession;[6] (2) hold administrative hearings to suspend or revoke licenses;[7] and (3) issue subpoenas.[8] Anyone appearing before the Board possesses the right to be represented by counsel and seek subpoenas from the state superior court for the production of documents or the appearance of individuals. A.R.S. §§ 32–929(B)(2)–(3). Moreover, the Board conducts all hearings pursuant to the Administrative Procedure's Adjudicative Proceedings provision, A.R.S. § 41–1061–67. See A.A.C. R4–7–303(A). Finally, any Board decision may be appealed to the State Superior Court. A.R.S. § 12–904(A).

---

**6.** A.R.S. § 32–904.

**7.** A.R.S. § 32–924.

**8.** A.R.S. § 32–929(B)(1).

Second, the Board member decision-makers exist sufficiently independent and free of political influence. The Board consists of five members, appointed by the Governor to serve five year terms, with no more than two consecutive terms. A.R.S. § 32–902. Additionally, the members each take an oath to fairly exercise their duties. *Id.* Finally, to guard against protectionist practices, the Board consists of both chiropractor and lay, consumer members.

The Board's administrative enforcement proceedings satisfy the requirements of *Butz,* thereby qualifying the State Defendants for absolute immunity. Consequently, Plaintiff's § 1983 claims against them in their personal capacities fail.

### (b) Qualified Immunity, if it Applied, Would Bar Plaintiff's Claim

Even if State Defendants failed to qualify for absolute immunity, qualified immunity also bars Plaintiff's claim. In *Harlow,* the Supreme Court established the test for qualified immunity: whether the official violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. The Supreme Court desired to simplify the qualified immunity defense by defining it using objective terms, which lower courts could use to decide the issue as a matter of law. *See Id.* at 819, 102 S.Ct. 2727.

Qualified immunity seeks to reconcile two important competing considerations. First, the interest in providing compensation to persons whose federally protected rights have been violated. "When governmental officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.'" *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034 (quoting *Harlow,* 457 U.S. at 814, 102 S.Ct. 2727). Second, "permitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* Qualified immunity seeks to balance these two competing interests by protecting public officials from personal liability as long as they do not violate clearly established federal law.

Unfortunately, the Supreme Court provides lower courts with little guidance on how to evaluate whether federal law is "clearly established." In *Anderson,* the Supreme Court summarized the *Harlow* standard:

The operation of this [objective reasonableness] standard ... depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights ... [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.* This is not to say that an official action is protected by quali-

fied immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034 (emphasis added); *see also Capoeman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985) (commenting on lack of clear standards and holding that "in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established ....").

More recently, in *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), the Supreme Court provided additional guidance, stating that the "clearly established" standard "is simply the adaptation of the fair warning standard to give officials ... the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *Id.* at 270–71, 117 S.Ct. 1219.

The Ninth Circuit developed a test for qualified immunity based on the above guidance from the Supreme Court. At times, the Ninth Circuit describes this test as two-part, and at other times as three-part:

> [A]pplication of the *Harlow* standard varies depending on the type of case we are addressing. In classes of cases in which we have considered it helpful we have divided the Harlow/*Anderson* inquiry into various two-part or three-part tests. In other types of cases, we have straightforwardly conducted the Harlow/*Anderson* inquiry, without any need for mediating doctrines or multipronged test.

*Grossman v. City of Portland,* 33 F.3d 1200, 1208 (9th Cir.1994) (footnote omitted). *See, e.g., Sweaney v. Ada County,* 119 F.3d 1385, 1388 (9th Cir.1997) (defining three-part test as "(1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful"); *Trevino v. Gates,* 99 F.3d 911, 916 (9th Cir.1996) (defining two-part test as if "(1) the 'right' [defendants] allegedly violated was not 'clearly established at the time of the violation, or (2) if a reasonable [official] would have thought that the defendants' actions were constitutional"). Any way articulated, the test centers on the legal interpretation of whether the official violated a clearly established law.

■ In 1980, the Supreme Court held in *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), that qualified immunity constitutes an affirmative defense that the defendant official has the burden of pleading. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (quoting *Gomez* ); *Harlow,* 457 U.S. at 815, 102 S.Ct. 2727 (stating that qualified immunity "is an affirmative defense that must be pleaded by a defendant official"). However, the Supreme Court leaves open the question of the burden of persuasion. The Ninth Circuit fills this gap by establishing a switching burden of persuasion.

■ First, after the defendant properly raises the defense of qualified immunity, the plaintiff initially bears the burden of showing the violation of a "clearly established" federal right. *Sweaney v. Ada County,* 119 F.3d 1385, 1388 (9th Cir.1997) ("The plaintiff bears the initial burden of proving that the right was clearly established."); *Trevino v. Gates,* 99 F.3d 911, 916–17 (9th Cir.1996) (same); *Houghton,* 965 F.2d at 1534 ("[Plaintiff] bears the initial burden of proving that the rights allegedly violated by [Defendant] were

clearly established at the time of the alleged misconduct.").

Then, after Plaintiff makes the above showing, the ultimate burden of persuasion switches back to the defendant officials. *Trevino*, 99 F.3d at 916–17 (stating that defendants bear the final burden of proving their conduct reasonable); *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992) (stating that the defendant "carries the burden of proving that his 'conduct was reasonable under the applicable standards ....' "); *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir.1988) ("the burden of proving the defense lies with the official asserting it").

Here, the State Defendants asserted the affirmative defense of qualified immunity in their Motion to Dismiss. Therefore, the burden of persuasion shifted to Plaintiff to establish a violation of clearly established federal right. Plaintiff fails to make such a showing.

First, the Ninth Circuit requires that " '[d]ue process violations ... be particularized before they can be subjected to the clearly established test.' " *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996) (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir.1995)). While Plaintiff fails to specifically allege in his Complaint what federal right State Defendants' violated, a liberal reading of the Complaint indicates that Plaintiff contends his federal due process rights were violated because the Board hearing was not conducted before an "independent Administrative Law Judge." (Complaint ¶ 93) (Doc. # 1).

Plaintiff's Complaint contains numerous details about his particular concerns regarding his interactions with the Board. Therefore, he provides sufficient particularized allegations of due process violations.

However, in the second part of the test, Plaintiff fails to establish that these alleged due process violations violate clearly established law. Plaintiff's Response contains no case law from the Ninth Circuit, or any other jurisdiction, showing that "a reasonable official would understand that what he is doing violates [due process rights]." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. Instead, Plaintiff simply states that State Defendants "have misapplied [qualified immunity law] to the facts of the instant case." (Response at 5) (Doc. # 56). This unsubstantiated claim fails to persuade the Court.[9]

### (3) *Res Judicata* Bars the Official Capacity Claim Requesting Prospective Relief

After applying the Eleventh Amendment and common law immunity doctrines, Plaintiff's official capacity suit against State Defendants for reinstatement constitutes his sole surviving federal claim. State Defendants argue that *res judicata* bars Plaintiff's § 1983 claim because it seeks to re-litigate, in the guise of a federal civil rights lawsuit, issues heard and decided by the Board which Plaintiff failed to appeal and subsequently became final. Plaintiff responds that no bar exists because the claim presents a constitutional civil rights issue.[10] The Court agrees with

---

**9.** Plaintiff also argues he may amend his Complaint at any time to correct any defect in his pleading associated with qualified immunity. (Response to State Defendants pp. 7–8) (Doc. # 56). However, five months have passed without Plaintiff filing any such amendment. Furthermore, the Response (not the Complaint) constitutes the proper place for addressing the qualified immunity issue.

**10.** This response actually addresses only State Defendants' *Rooker–Feldman* argument. However, as State Defendants' presented their *res judicata* argument in the same subsection as the *Rooker–Feldman* argument, the Court construes Plaintiff's response to also apply to *res judicata*.

State Defendants, finding that *res judicata* bars this claim.

■ When a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties possessed an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect as entitled in that state's courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 798–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Skysign Int'l, Inc. v. City and County of Honolulu*, 276 F.3d 1109, 1115 (9th Cir.2002); *Olson*, 188 F.3d at 1086.

However, the Court must first independently assess the adequacy of the state's administrative forum.

> The threshold inquiry . . . is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment. This requires careful review of the administrative record to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions . . . Although a federal court should ordinarily give preclusive effect when the state court would do so, there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down [for federal courts].

*Olson*, 188 F.3d at 1086 (quoting *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir.1994)). The Supreme Court listed these criteria in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966):(1) that the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues of fact properly before it; and (3) that the parties have an

adequate opportunity to litigate. *Id.* at 422.

■ Under Arizona law, failure to appeal a final administrative decision renders the decision final and *res judicata*. *Hawkins v. State Dep't of Economic Sec.*, 183 Ariz. 100, 103–4, 900 P.2d 1236, 1239–40 (Ariz.App.1995); *Olson*, 188 F.3d at 1086. *Res judicata* constitutes an affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions that could have been—but was not—raised in the first suit. Black's Law Dictionary 1312 (7th ed.1999); *Gilbert v. Board of Medical Examiners of the State of Arizona*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (Ariz.App.1987).

> [T]he failure to seek judicial review of an administrative order precludes collateral attack of the order in a separate complaint. If no timely appeal is taken, the decision of the board is "conclusively presumed to be just, reasonable, and lawful." . . . . This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction to the appeal.

*Olson*, 188 F.3d at 1085 (quoting *Gilbert*, 155 Ariz. at 176, 745 P.2d at 624).

At Plaintiff's administrative hearing, the issues before the Board consisted of determining whether Plaintiff (1) engaged in unprofessional conduct; (2) made false or misleading statements; (3) failed to create and maintain patient records; and (4) failed to allow properly authorized Board personnel to access documents pursuant to a Board issued subpoena. Plaintiff appeared alone, but neither party disputes that Plaintiff knew he could be represented by counsel. Plaintiff refused to mount a defense, despite numerous requests by the Board. Instead, he responded: "You

are violating my constitutional and civil rights to a fair and just hearing before an independent Administrative Law Judge." (Complaint ¶ 93) (Doc. # 1). The Board considered Plaintiff's argument, and determined due process did not require a hearing before an independent Administrative Law Judge. (State Defendant's Motion to Dismiss, Exhibit 3, pp. 14–19) (Doc. # 43). Therefore, the Board (1) conducted a hearing, with testimony from witnesses and experts; (2) issued findings of facts and conclusions of law; and (3) issued an order to revoke Plaintiff's license.

Pursuant to A.R.S. § 12–904(A), appeals of the Board's decision needed to be made within thirty-five days. However, instead of appealing to Arizona Superior Court as the law allowed, Plaintiff filed this federal lawsuit. After the appeals period ran, state law rendered the Board's factual and legal determinations preclusive.

▮ Our examination of the record reveals that the Board's process comports with the requirements of *Utah Construction*. First, the Board acted in a judicial capacity when conducting Plaintiff's hearing. *See, supra,* discussion on Absolute Immunity.

Second, the Board afforded both parties an adequate opportunity to litigate. Plaintiff possessed every right to raise any constitutional defenses with the Board or on appeal in state court. *Olson*, 188 F.3d at 1086–87; *Gilbert*, 155 Ariz. at 174, 745 P.2d 617 (holding that an assertion of irregularity in the proceedings before the Board of Medical Examiners—that the board members were conspiring against him and were motivated to act for reasons other than protection of the public—could have been raised before the board and on appeal of the board decision to the superior court).

Finally, the agency properly resolved all issues before it after conducting an extensive hearing involving witnesses and experts. In fact, Plaintiff actually raised the same due process concerns alleged in his § 1983 claim, and the Board ruled on them during his hearing. Therefore, *res judicata* bars re-litigating these concerns.

## 2. State Claims

In various Responses to the Motions to Dismiss, Plaintiff concedes that he fails to state a claim for some of his state law claims. However, Plaintiff continues to allege the following state law claims: (1) malicious prosecution against Daniel; (2) Defamation against Daniel, Board, all State Defendants except Pritzel, and Edward; (3) IIED against Daniel, Board, all State Defendants except Pritzel, and Edward; and (4) NIED against Daniel, Board, all State Defendants except Pritzel, and Edward.

The Court only possesses jurisdiction over these claims pursuant to supplemental jurisdiction. 28 U.S.C. § 1367. Section 1367(a) provides:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

▮ Although a district court may hear state law claims brought under § 1367(a), the Court possesses discretion to refuse jurisdiction.

> The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c). "In the usual case in which all federal-law claims are eliminated before trial, balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303, 1309 (9th Cir.1992); *Hembree v. San Francisco Bay Area Rapid Transit Dist.,* 2002 U.S. Dist. LEXIS 11089, *25–27, No. C–01–03102 EDL (N.D. Cal. June 18, 2002). Some circuits find that a court may retain jurisdiction over state law claims if extraordinary or unusual circumstances justify retention. *See, e.g., Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir.1996); *Wentzka v. Gellman,* 991 F.2d 423, 425 (7th Cir.1993).

As the Court grants dismissal for all Defendants on Plaintiff's § 1983 claim, only state law claims remain. Plaintiff's federal claim provided the only basis for federal jurisdiction.[11] The Court acknowledges that a state court, more familiar with applicable local law, provides a better forum for resolving Plaintiff's remaining claims. While the Court recognizes that litigation of a new suit in state court may create some inconveniences to Plaintiff, Plaintiff makes no showing of extraordinary or unusual circumstances to warrant this Court retaining jurisdiction over his state law claims. Consequently, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g., Hembree,* 2002 U.S. Dist. LEXIS 11089 (declining to exercise supplemental jurisdiction over IIED and NIED state claims).

Accordingly,

**IT IS THEREFORE ORDERED** that the State of Arizona's Motion to Dismiss is **GRANTED** (Doc. # 42). Count 1 (§ 1983) is dismissed with prejudice, and the remaining state law counts are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that the Board and State Defendants' Motion to Dismiss is **GRANTED** (Doc. # 43). Count 1 (§ 1983) is dismissed with prejudice, and the remaining state law counts are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that Daniel's Motion to Dismiss (Doc. # 41) and Edward's Motion to Dismiss (Doc. # 44) is **GRANTED.** All counts against them are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

---

**11.** Plaintiff fails to allege diversity jurisdiction.