690 F.Supp. 839 (1988)
James ARMSTRONG, Plaintiff,
v.
Thomas K. TURNAGE, Administrator, Veterans Administration, Defendant.
No. 87-1744C(6).
United States District Court, E.D. Missouri, E.D.
July 21, 1988.
Burton Newman, St. Louis, Mo., for plaintiff.
Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
Plaintiff is a staff pharmacist employed by the Veterans Administration at the Veterans Administration Medical Center at St. Louis, Missouri. He has filed this action pursuant to Section 717(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended, alleging that racial discrimination was the cause of his being downgraded in pay. The following findings of fact and conclusions of law are entered pursuant to Rule 52(a), Fed.R.Civ. P.

Findings of Fact
Plaintiff is black and except for the period which resulted in his downgrade in pay has been an exemplary employee of the Veterans Administration Medical Center in St. Louis and had performed his duties as a staff pharmacist without any unsatisfactory performance ratings.
In 1981, the Pharmacy Service developed performance requirements for its staff pharmacists. These requirements covered several functions, the most important of which relate to drug dispensing. Pharmacists were required to verify the accuracy of medications and labeling as ordered or prescribed by physicians.
A rating period, usually twelve months in length, was established during which each pharmacist's actions would be reviewed for prescription and labeling errors. Under the performance requirements, no more than eight incorrect medications and/or labelings would be permitted to be filled and/or dispensed to patients or to hospital wards during the rating period. Under the policy established at the St. Louis Division, no error was charged against a pharmacist unless the erroneously filled or labeled *840 medication was actually dispensed, i.e., actually left the pharmacy.
Upon committing his or her eighth dispensing error, the pharmacist would be so advised by the supervisor and be given a particularized listing of the errors. The pharmacist was also cautioned to use care in the filling and dispensing of medications and warned that another error within the rating period would result in adverse action being taken.
Plaintiff's rating period for this case commenced May 1, 1982. On December 20, 1982[1] plaintiff was mailed the following notice by his supervisor advising that he had made eight errors to that date:
1. A recent review of the performance standards indicates that you are at the "met" level of performance for the standard pertaining to accuracy in the Key Responsibility, Drug Dispensing, identified as a critical element.
2. The standard is: "Verifies medication and labeling for accuracy against physician's orders or prescriptions. No more than 8 incorrect medications and/or labels are filled and/or dispensed to patients and/or wards (Far Exceed  0)."
3. To date, the following incorrect medications/labels have been dispensed or OK'd for dispensing by you:

6-18-82 drug prescribed: Valium 10mg
 drug dispensed: Valium 5mg
8-20-82 drug prescribed: Aminophylline 1Gm
 drug labeled: Aminophylline 100mg
8-20-82 drug prescribed: Cefazolin 1Gm
 drug dispensed: Cefoxitin 1Gm
8-30-82 drug prescribed: Acetaminophen with
 Codeine 15mg
 drug dispensed: Acetaminophen with
 Codeine 30mg
9-1-82 drug prescribed: Restoril 15mg
 drug dispensed: Dalmane 15mg
9-8-82 drug prescribed: Sinemet 25/100
 drug dispensed: Sinemet 25/250
9-24-82 drug prepacked: Isosorbide 5mg PO
 drug labeled: Isosorbide 5mg SL
10-29-82 drug prescribed: Aminophylline 500mg
 in normal saline
 drug dispensed: Aminophylline 500mg
 in D5W

4. Please make sure that all work is thoroughly checked for accuracy before dispensing. When working in the inpatient area, please carefully check the work of subordinates before dispensing or OK'ing for dispensing.
5. As we discussed previously, during your rotation in inpatient I will assign assistance to you to help check IV requests during period of peak workload.
6. For your information, I am attaching a copy of a "Summary of Suggestions for Minimizing Dispensing Errors," as published in the 1980-1981 edition of the Pharmacy Law Digest.
7. If you have any suggestions or comments, please feel free to discuss them with me. I would like to remind you that failure to meet a key responsibility identified as a critical element could result in adverse actions. At this point, you have not failed the standard, but one more medication/labeling error could change the situation.
(signed)
Thomas L. Meyer
Supervisory Pharmacist
On January 6, 1983 discovery was made that the June 18, 1982 error was not attributable to plaintiff, and he was advised of that fact.
On January 26, plaintiff was charged with another or eighth error and advised of that fact and told that further error would result in his failure to meet the requisite standards.
On February 10, a ninth error was committed by plaintiff and he was told that his performance in drug dispensing was unacceptable. He was further advised that he would be given to May 31 to demonstrate acceptable performance by not making further errors. He was also told that failure to demonstrate acceptable performance could result in reassignment, demotion or separation from service.
On March 23, 1983, plaintiff made his tenth error, and a fellow pharmacist was *841 assigned to work with him to co-sign prescriptions.
On April 9, 1983 plaintiff made his eleventh error and was reduced in grade from GS 11, step 8 to GS 9, step 8.
The eleven errors are as follows:

No. Date Error
 1. 8-5-82 Acetaminophen with
 Codeine 30 mg dispensed
 for
 Acetaminophen with
 Codeine 15mg
 2. 8-19-82 Aminophylline 1 Gram
 labeled and dispensed
 as
 Aminophylline 100mg
 3. 8-19-82 Cefoxitin 1 Gram dispensed
 for Cefazolin
 1 Gram
 4. 8-27-82 Dalmane 15mg dispensed
 for Restoril 15
 mg
 5. 9-8-82 Sinemet 25/250 dispensed
 for Sinemet 25/100
 6. 9-20-82 Isosorbide oral 5mg
 prepacks labeled as
 Isosorbide sublingual
 5mg
 7. 10-29-82 Aminophylline 500 mg
 in 5% dextrose in water
 dispensed for Aminophylline
 500mg in
 Normal Saline
 8. 1-25-83 Heparin 25,000 units in
 5% dextrose in water
 dispensed for Heparin
 25,000 units in Normal
 Saline
 9. 2-10-83 Prolixin decanoate
 25mg/ml dispensed
 for Prolixin Enanthate
 25mg/ml
10. 3-23-83 Diltiazem 60mg dispensed
 for Diltiazem
 30mg
11. 4-9-83 Gentamicin 60mg dispensed
 for Gentamicin
 80mg

Plaintiff contends that item No. 6-the isosorbide errorshould not be charged, as it did not leave the pharmacy. As previously noted, under established policy, items not dispensed, i.e., not leaving the pharmacy, were not charged as errors. The Court finds from the credible evidence that the isosorbide was in fact dispensed to the hospital ward and did constitute a dispensing error attributable to plaintiff.
Plaintiff also contends that item No. 9-the prolixin decanoate which was dispensed is essentially the same as prolixin enanthate and should not be considered as an error. The Court finds from the credible evidence that there is a substantial difference between the two medications, and that it was error to have dispensed prolixin decanoate instead of prolixin enanthate.
Thus, the credible evidence clearly supports the finding that plaintiff committed eleven chargeable dispensing errors within his rating period of May 1, 1982 through May 31, 1983, three of them occurring after being advised of having met the eight error limitation before consideration of adverse action.
The evidence is manifest that adverse action against plaintiff was justified due to unacceptable work performance under the regional standards. Plaintiff accepts the fact that the number of errors charged to him within the particular time frame were sufficient to warrant the reduction in pay.
At the time of trial, plaintiff had again reached GS-11 status, but only as to step 5. It is stipulated by the parties that his loss of pay is $19,931.
Plaintiff's theory of discrimination stems from his contention that John Morian, a white fellow employee, was treated with greater favor. Plaintiff argues that during the same rating period of May 1, 1982 through May 31, 1983, Morian committed the same number of dispensing errors as plaintiff-eleven-but no adverse action resulted; hence, the discrimination.
On January 6, 1983, Morian received notice that he had committed his eighth error during the rating period and received the same warning as plaintiff to review his work carefully. On March 8, 1983, Morian *842 received his warning notice of having committed his ninth error and given to May 31, 1983  the same as plaintiff  in which to demonstrate acceptable performance.
The Court finds from the credible evidence that under procedures followed and under the proper method for computing errors for the May 1, 1982-May 31, 1983 period, Morian was not subject to adverse disciplinary action. One of Morian's errors was not a dispensing error, in that the prescription did not leave the pharmacy. Another error was not discovered until Morian was in his warning period, though the error had in fact occurred during the rating period. Existing policy did not allow for such an error to be charged against Morian during the warning period after the ninth error. The final error  a failure to report a known error  which plaintiff suggests should have been charged to Morian, was not known to the rating supervisor during the rating and warning period. Neither should it have been attributed to Morian.
The Court therefore finds that there were no additional errors which legitimately could have been charged to Morian after he entered the ninth error warning period. Thus, no legitimate basis existed for an adverse action against Morian. Certainly, the failure to discipline him was not discrimination or for discriminatory reasons.

Conclusions of Law
The Court has jurisdiction of this matter pursuant to § 717(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended.
The following from Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981) controls this case.
First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for [his action]...." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.
The Court will assume that plaintiff has presented a prima facie case of discrimination. He is a member of a protected class, he was demoted, based on violation of accepted department regulations and procedures. He had eleven dispensing errors  two above the allowable limit. A white fellow employee was not disciplined for having ten errors within the same period. Having established his prima facie case, defendant employer may rebut it simply by showing a legitimate, nondiscriminatory basis for disparate treatment. Watson v. Forth Worth Bank & Trust, ___ U.S. ___, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). If the defendant can carry this burden, plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered for the discipline were but a cover for a discriminatory motive. Gilreath v. Butler Mfg. Co., 750 F.2d 701, 702 (8th Cir.1984); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1253 (8th Cir. 1981).
In this case, there is no question that basis existed for plaintiff's demotion. He was properly charged with eleven dispensing errors, more than enough under established procedures and policies. The critical issue in this case, however, is whether defendant's disparate treatment of plaintiff's white fellow employees were a mere pretext to cover a discriminatory motive. Gilreath v. Butler Mfg. Co., 750 F.2d at 702. Proof of a discriminatory motive is critical to plaintiff's case. Johnson v. Bunny Bread Co., 646 F.2d at 1254. The Court finds that no discriminatory motive exists in the different treatment by defendant of plaintiff and Morian.
Plaintiff had violated prescription dispensing procedures and was legitimately disciplined. So, also, was Morian guilty of dispensing procedures  not as many as *843 plaintiff  but enough that he too should have been disciplined. But by a quirk in procedures, one or two of Morian's errors were committed during the rating period and were not discovered until he was in his warning period. Under proper procedures, these errors could not be charged to Morian while in his warning period  and they should not have been.
Though in this instance the procedures applied did result in a disparate treatment between Morian and plaintiff, there is absolutely no showing that the procedures were racially motivated. Plaintiff must therefore fail in his claim, not having met his burden of demonstrating that the distinction in treatment was racially motivated. United Postal Service v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); Gilreath v. Butler Mfg. Co, supra.
Judgment for defendant.
NOTES
[1] The letter is dated January 20, 1982, but the Court finds that date to be erroneous. The correct date for the letter as it was prepared is December 20, 1982.