900 P.2d 1236

**Charles E. HAWKINS and Delma Hunter, husband and wife, Plaintiffs/Appellants,**

v.

**STATE of Arizona; DEPARTMENT OF ECONOMIC SECURITY, Defendants/Appellees.**

**No. 2 CA–CV–95–0070.**

Court of Appeals of Arizona, Division 2, Department A.

Aug. 10, 1995.

---

Elaine C. Hardin, Tucson, for plaintiffs/appellants.

Ryley, Carlock & Applewhite by Charles L. Chester, Patrick J. Duffy, Phoenix, for defendants/appellees.

## OPINION

PELANDER, Judge.

This appeal raises an issue of first impression in Arizona: whether a judicially-unreviewed administrative determination by the state personnel board upholding a state employee's demotion for cause has *res judicata* or collateral estoppel effect on, and therefore bars, a subsequent lawsuit claiming unlawful race and sex discrimination under the Arizona Civil Rights Act [ACRA], A.R.S. §§ 41–

1461 through 1464, 41–1481 through 1484.[1] We hold that the state personnel board's determination that there was "cause" to discipline an employee does not preclude a separate suit under the ACRA, and vacate the trial court's order granting summary judgment in favor of the State of Arizona and its Department of Economic Security.

## BACKGROUND

Appellant, Charles Hawkins (hereinafter "appellant"), a permanent status state employee with the Arizona Department of Economic Security [DES], was demoted for alleged job performance deficiencies, resulting in a decrease in job classification and pay. He appealed to the Arizona State Personnel Board, claiming that the demotion was without "just cause" and seeking reinstatement with full back pay.[2] Following a two-day contested hearing at which appellant testified and was represented by a union representative, the administrative hearing officer rendered findings and conclusions that cause existed for the demotion under A.R.S. § 41–770 and the applicable administrative personnel rules. The hearing officer recommended that the demotion be sustained. His findings and conclusions were adopted by the state personnel board, which upheld appellant's demotion and denied his administrative appeal.

In his appeal, appellant did not specifically allege that his demotion was discriminatorily based on his race or sex, or that he was a victim of disparate treatment. No evidence relating to alleged race or sex discrimination was presented, and no such issues were actually litigated, at the administrative hearing.

Nor did the hearing officer's findings and conclusions address or resolve any claims relating to discrimination or disparate treatment. For example, the performance of other co-employees and any disciplinary measures taken with respect to them vis-a-vis the appellant were not considered or determined by the personnel board.

Appellant did not seek judicial review of the personnel board's decision as he had a right to do under A.R.S. § 41–785(D). Instead, after receiving the hearing officer's adverse findings, conclusions and recommendation, appellant filed a charge with the Arizona Civil Rights Division [ACRD], claiming discrimination by his DES superiors based on his sex (male) and race (African–American). In that charge appellant contended that a similarly situated Caucasian female co-employee had experienced similar job performance problems but was laterally transferred to a less stressful position with no decrease in pay. He further contended that other Caucasian females were not demoted and received lesser discipline despite similar work performance deficiencies. Appellant alleged that but for his sex and/or race, he would not have been demoted.

Almost one year after filing his charge with the ACRD, appellant filed this action, alleging, *inter alia*, that he was demoted because of his sex and race in violation of the ACRA.[3] In granting summary judgment for the state, the trial court explained the basis for its ruling as follows:

> Plaintiff cannot establish a prima facie case of race discrimination because a member of Mr. Hawkins' racial group replaced him as a Human Service Specialist III

---

1. Under A.R.S. § 41–1463(B)(1), it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions or privileges of employment because of such individual's race or sex.

2. Appellant's claim was based on a state personnel rule which provides that "[a] permanent status employee may be demoted for cause by an agency head to any permanent position" and which requires "a written notice containing specific reasons for the demotion." Ariz.Admin.Code R2–5–802. Appellant does not chal-

lenge the sufficiency of the notice furnished to him.

3. Unlike his charge filed with the ACRD, which claimed violations of both the Arizona Civil Rights Act and Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, appellant's discrimination claim in this case was limited to the Arizona statute. Other tort and contract claims in appellant's complaint were dismissed by the trial court and are not in issue on this appeal.

after his demotion. Plaintiffs also cannot establish a claim of race and sex discrimination because the doctrine of collateral estoppel precludes them from proving the essential elements of their discrimination claims. The doctrine of res judicata further bars plaintiffs from litigating this case because they had an adequate opportunity to litigate their claims before the State Personnel Board.

This appeal followed.

### STANDARD OF REVIEW

On appeal from a summary judgment we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *United Bank v. Allyn,* 167 Ariz. 191, 805 P.2d 1012 (App.1990). We will also review *de novo* issues of statutory interpretation because they are issues of law. *Norquip Rental Corp. v. Sky Steel Erectors, Inc.,* 175 Ariz. 199, 854 P.2d 1185 (App.1993). We view the evidence in a light most favorable to the party against whom summary judgment was entered, and all favorable inferences fairly arising from the evidence must be given to that party. *Angus Medical Co. v. Digital Equip. Corp.,* 173 Ariz. 159, 840 P.2d 1024 (App.1992); *Ancell v. Union Station Associates, Inc.,* 166 Ariz. 457, 803 P.2d 450 (App.1990). We will affirm if the trial court's disposition is correct for any reason. *Glaze v. Marcus,* 151 Ariz. 538, 729 P.2d 342 (App.1986).

### DISCUSSION

As Division One of this court recognized in *Ferris v. Hawkins,* 135 Ariz. 329, 331, 660 P.2d 1256, 1258 (App.1983) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980)), the doctrines of *res judicata* and collateral estoppel " 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " While the doctrines have similar purposes, they are nevertheless different.

Under the doctrine of *res judicata,* a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. This doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points which might have been litigated....

The doctrine of "collateral estoppel" is a doctrine of issue preclusion. It bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action. The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties.

*Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987) (citations omitted). *See also Western Cable v. Industrial Comm'n of Arizona,* 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985) (claim preclusion prohibits relitigation of the same claim, including matters that were actually decided or that could have been decided; issue preclusion prohibits religation of the same issue, but only applies to matters that were actually litigated and determined and only if such determination was essential); *Barassi v. Matison,* 134 Ariz. 338, 340, 656 P.2d 627, 629 (App.1982) (the doctrine of *res judicata* gives conclusive effect to every point decided and every point which could have been raised by the record and decided with respect to the parties thereto).

Both doctrines of *res judicata* and collateral estoppel may apply to decisions of administrative agencies acting in a quasi-judicial capacity. *See, e.g., Yavapai County v. Wilkinson,* 111 Ariz. 530, 532, 534 P.2d 735, 737 (1975); *Casillas v. Arizona Dep't of Economic Security,* 153 Ariz. 579, 581, 739 P.2d 800, 802 (App.1986). There are sound policy reasons for this rule. The *res judicata*

doctrine " 'rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations.' " *Campbell v. Superior Court*, 18 Ariz.App. 287, 290, 501 P.2d 463, 466 (1972) (quoting *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905 (1948)). Thus, " 'when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.' " *Id.* (quoting *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 660–61 (1966)). Arizona case law also makes clear that "the failure to seek judicial review of an administrative order precludes attacking the order by means of a separate complaint." *Gilbert*, 155 Ariz. at 176, 745 P.2d at 624. Where a party does not appeal a final administrative decision that decision becomes final and *res judicata*. *Guertin v. Pinal County*, 178 Ariz. 610, 875 P.2d 843 (App. 1994). *See also Hurst v. Bisbee Unified Sch. Dist.*, 125 Ariz. 72, 75, 607 P.2d 391, 394 (App.1979).

■ Appellant contends that the personnel board proceeding and determination should be accorded neither *res judicata* nor collateral estoppel effect so as to preclude his discrimination claims under the ACRA in this case. We agree. Although the Arizona cases cited above contain broad language and suggest expansive application of preclusion principles, none involves the ACRA.

The United States Supreme Court has held that judicially-unreviewed state administrative proceedings, in which it was determined that an employee's termination was not racially motivated, did not have preclusive effect on the employee's discrimination claims under Title VII. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220,

92 L.Ed.2d 635 (1986). Despite the fact that the employee requested the administrative hearing, rather than being compelled to participate in it, the Court concluded that a common-law rule of preclusion would not be consistent with Congress' intent in enacting Title VII. *Id.* at 796 n. 5, 106 S.Ct. at 3225 n. 5, 92 L.Ed.2d at 645 n. 5.[4]

■ While the provisions of Title VII and the ACRA are not identical in all respects, they share a common intent and purpose. Because the Arizona statute is modeled after federal employment discrimination laws, federal cases interpreting and applying Title VII are instructive with regard to the ACRA. *Timmons v. City of Tucson*, 171 Ariz. 350, 354, 830 P.2d 871, 875 (App.1991). The ACRA, like Title VII, is remedial legislation designed to eliminate discrimination and to protect employees. It must therefore be liberally construed to protect employees. *Bogue v. Better–Bilt Aluminum Co.*, 179 Ariz. 22, 32, 875 P.2d 1327, 1337 (App.1994). As the Supreme Court concluded with respect to Title VII in *Elliott*, a common-law rule of preclusion would be inconsistent with the underlying intent and purpose of the ACRA.

Moreover, the statutory and regulatory framework relating to the state personnel board suggests that discrimination claims are separate and distinct, and handled differently than other employment-related claims. A.R.S. § 41–782(A) provides that "[t]he personnel board shall hear and review appeals as provided in [article 6, Title 41, 12A A.R.S.] relating to … demotion resulting from disciplinary action as defined in the personnel rules." Under A.R.S. § 41–783(16), the personnel rules shall include "[e]stablishment of a plan for resolving employee grievances and complaints and *in cases of alleged discrimination for referral to the appropriate agency if an employee is not otherwise satisfied with the final grievance resolution.*" (Emphasis supplied).

---

4. In *Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), the Court similarly held that judicially-unreviewed findings of a state administrative agency made with respect to an age-discrimina-

tion claim have no preclusive effect on federal proceedings under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*

In accordance with that statutory mandate, the personnel rules governing DES and other state agencies contain a separate grievance procedure for discrimination claims. For example, the personnel rules require each agency to "adopt a grievance procedure which will afford each employee a systematic means of resolving complaints concerning discrimination...." Ariz.Admin.Code R2–5–701(A).[5] Moreover, the detailed grievance procedures set forth in the personnel rules conclude with a provision specifically relating to discrimination: "An employee who has a complaint alleging discrimination prohibited by A.R.S. § 41–1463 and who is not satisfied with the final grievance resolution will be referred to the appropriate agency by the Director [of the Department of Administration or his/her designee]." Ariz.Admin.Code R2–5–702(D). Thus, discrimination claims not susceptible to resolution in the grievance stage are to be referred to the ACRD, "the appropriate agency" with specialized knowledge and expertise in handling discrimination claims.

From this statutory and regulatory framework, we infer a legislative intent that discrimination claims not be relegated to routine personnel board procedures and determinations, but rather that they be subjected to more intensive review and scrutiny. To give preclusive effect to a judicially-unreviewed personnel board decision in this context would contravene that intent. That is particularly so in this case, where appellant's administrative appeal did not specifically allege discrimination. Any issues relating to the discrimination claim were not actually litigated in the administrative hearing. The hearing officer's findings and conclusions did not address or resolve any discrimination claims nor was the determination of any such claims essential to his decision whether there was "cause," as defined in A.R.S. § 41–770, for appellant's demotion.

The analysis in *Ferris* is instructive. There, the question whether Ferris, a state employee, was discharged for cause was an issue in both his claim for unemployment benefits and his appeal to the personnel board of his discharge. On appeal from a decision disqualifying Ferris from receiving unemployment benefits based on a finding of misconduct, the superior court reversed and ruled that Ferris' dismissal was improper and grossly unfair. Ferris then asserted in his separate appeal from an unfavorable personnel board determination that, under collateral estoppel principles, the issue of whether his discharge was supported by cause under A.R.S. § 41–770 "was necessarily determined in his favor in the unemployment litigation." 135 Ariz. at 331, 660 P.2d at 1258. The court of appeals in *Ferris* disagreed because of "the dissimilar and unrelated purposes" between the unemployment compensation statutes and the state personnel statutes, and because of "the drastic difference in their respective remedies." *Id.* The court stated:

Because we find that Ferris' claim for unemployment compensation and his action for reinstatement involve "distinct" legal rights and that the remedies available under each statutory scheme are markedly different, we hold that the litigation of Ferris' discharge in his suit for unemployment compensation cannot be asserted by way of collateral estoppel or *res judicata* to preclude the determination of the propriety of his discharge in the personnel litigation. In our view, to apply principles of issue preclusion under these circumstances would defeat the intent of the legislature and the salutary purposes underly-

---

**5.** The Administrative Code also provides that "[t]he adopted grievance procedure shall not apply to any matter for which another method of review is provided, including but not limited to ... demotion, or dismissal resulting from disciplinary action." Ariz.Admin.Code R2–5–701(B)(2). That rule, however, cannot override the statute requiring "[e]stablishment of a plan ... in cases of alleged discrimination for referral to the appropriate agency if an employee is not otherwise satisfied with the final grievance resolution." A.R.S. § 41–783(16). Therefore, whether or not the grievance procedure applies to demotion cases like this, we do not believe a personnel board determination on the issue of "cause" for the demotion precludes a discrimination charge with the ACRD or subsequent lawsuit under the ACRA.

ing the unemployment compensation statute as well as the purpose behind the creation of the Personnel Board.

. . . .

... The judicial efficiency which can be obtained through application of principles of issue preclusion must give way where their rigid application would result in frustration of legislative purpose. Because of the totally distinct and separate nature of the rights and remedies under the unemployment compensation act and the Personnel Board legislation, we find that this is a case in which the legislative policy underlying each statutory scheme can only be achieved by allowing litigants a full and fair opportunity to independently present their respective claims in each forum.

*Id.*, 135 Ariz. at 332, 333, 660 P.2d at 1259, 1260.

As we have noted, the state personnel statutes and the ACRA have "dissimilar and unrelated purposes." *Id.* at 331, 660 P.2d at 1258. In addition, there is a significant "difference in their respective remedies." *Id. Compare* Ariz.Admin.Code R5–5.1–102(B)(13) (authorizing reinstatement with or without back pay) *with* A.R.S. § 41–1481(G), (J) (authorizing reinstatement with or without back pay, injunctive or other equitable relief, and an award of attorney's fees); *Timmons,* 171 Ariz. at 354, 830 P.2d at 875 (ACRA authorizes front pay in appropriate circumstances). Because appellant's discrimination claims in this case and his administrative appeal with the personnel board involved distinct legal rights and different remedies, we conclude that application of principles of issue preclusion would defeat the legislative intent and purpose of the ACRA and the purpose behind the personnel board as well. *Ferris,* 135 Ariz. at 332, 660 P.2d at 1259.

■ Further, summary judgment as to appellant's race discrimination claim cannot be sustained on the basis that the appellant's position was filled by a person of his same race. That fact does not preclude a prima facie showing of disparate treatment. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215 (1981). Even though appellant was found to have been demoted for cause, he may still be able to establish a prima facie case of disparate treatment by showing that a similarly situated Caucasian employee, with similar job performance deficiencies and for whom cause for demotion may also have existed, was treated differently. *See, e.g., Armstrong v. Turnage,* 690 F.Supp. 839, 842 (E.D.Mo.), *aff'd,* 873 F.2d 1448 (1988). An employer cannot avoid liability for discrimination, under these facts, by replacing the demoted employee with a person of his same race.

Finally, in a factually similar case, the West Virginia Supreme Court recently concluded that a civil action filed pursuant to that state's anti-discrimination statute was not precluded by a prior grievance proceeding involving the same parties and arising out of the same facts and circumstances, but which did not result in any findings of fact or conclusions of law regarding the discrimination claim. *Vest v. Board of Educ.,* 193 W.Va. 222, 455 S.E.2d 781 (1995). We find the West Virginia court's analysis compelling and, like that court, conclude that the grievance/personnel procedures and the ACRA provide "enforcement mechanisms to accomplish different legislative purposes and neither preempts the other." *Id.* at 788.

For the reasons stated above, the summary judgment is vacated and this case is remanded for further proceedings consistent with this opinion.

LIVERMORE, P.J., and FERNANDEZ, J., concur.