NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

COMPASS BANK, an Alabama corporation,
*Plaintiff/Appellee,*

*v.*

ROBERT HAMILTON BENNETT, SR. and MARILYN JO BENNETT,
husband and wife; ROBERT HAMILTON BENNETT AND MARILYN JO
BENNETT FAMILY TRUST,
*Defendants/Appellants*.

No. 1 CA-CV 14-0850
FILED 4-7-2016

Appeal from the Superior Court in Maricopa County
No. CV2011-012854
The Honorable J. Richard Gama, Judge

**AFFIRMED**

COUNSEL

Berens, Kozub, Kloberdanz & Blonstein, PLC, Scottsdale
By Daniel L. Kloberdanz, William A. Kozub
*Counsel for Defendants/Appellants*

Engelman Berger, P.C., Phoenix
By Scott B. Cohen, Bradley D. Pack
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Randall M. Howe joined.

---

**T H U M M A**, Judge:

**¶1**        Robert Hamilton and Marilyn Jo Bennett, husband and wife, (the Bennetts) and the Robert Hamilton Bennett and Marilyn Jo Bennett Family Trust (the Bennett Trust) appeal from the grant of summary judgment in favor of plaintiff Compass Bank. The Bennetts and the Bennett Trust (collectively Defendants) claim Compass was precluded from suing to collect on its note without first taking action to waive its security interest (a deed of trust) against a house. Because the superior court did not err, the judgment is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In 2007, the Bennett Trust purchased a house in Paradise Valley for $3.15 million. To fund the purchase, the Bennett Trust made a down payment of $850,000 and borrowed $1.9 million from Bank of America, while the sellers provided a $400,000 carryback loan. The house was the Bennetts' primary residence.

**¶3**        In 2009, the Bennetts repaid the $400,000 carryback loan. Later in 2009, the Defendants then obtained a second-position $1 million home equity loan from Compass. The home equity loan transaction included a security agreement and a second-position deed of trust against the house, both of which were signed by Defendants. No portion of the home equity loan was used to build any structure or improvement on the property or to repay the $400,000 carryback loan.

**¶4**        Defendants subsequently defaulted on their loan repayment obligations. Compass then accelerated the amount due under the $1 million home equity loan, which remained unpaid.

---

[1] Although the superior court resolved cross-motions for summary judgment based largely on stipulated facts, this court "view[s] the evidence and reasonable inferences in the light most favorable to" Defendants. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

¶5            At some point before Compass filed this lawsuit, Bank of America noticed a non-judicial trustee's sale on the first-position $1.9 million loan. In early June 2011, after receiving notice of the trustee's sale but before the actual trustee's sale, Compass filed this lawsuit against Defendants, seeking to enforce the security agreement for the second-position $1 million home equity loan. Compass did not expressly waive its rights under the second-position deed of trust that secured the $1 million home equity loan at any time before the trustee's sale on the first-position Bank of America loan.

¶6            At the trustee's sale on the first-position loan held in late June 2011, the house sold to Bank of America for its credit bid. The trustee's sale extinguished Compass' second-position deed of trust that secured the $1 million home equity loan, and several weeks later, Compass served Defendants in this case to collect on its loan.

¶7            Following discovery, Defendants moved for summary judgment, arguing Compass had an obligation to expressly waive its rights under the second-position deed of trust before suing on the security agreement and that the failure to do so barred this lawsuit. Compass argued it was not required to expressly waive its rights under the second-position deed of trust before suing on the security agreement and cross-moved for summary judgment based on Defendants' admitted failure to repay the $1 million home equity loan.

¶8            After briefing and oral argument, the superior court denied Defendants' motion for summary judgment and granted Compass' cross-motion for summary judgment. Although noting "[a] lender must 'forego' enforcement of the rights it possesses to foreclose on its deed of trust" when it sues on its non-purchase-money note, the court concluded "[t]he predicate act [for such a waiver] is simply failing to exercise these rights." Because Compass had failed to exercise its rights under the second-position deed of trust, and because the trustee's sale on the first-position loan had extinguished those rights, the court entered judgment in favor of Compass and against Defendants on the $1 million home equity loan. The court also awarded Compass interest, taxable costs and attorneys' fees.

**¶9** This court has jurisdiction over Defendants' timely appeal pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(4) and -2101(A)(1) (2016).[2]

## DISCUSSION

**¶10** Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). This court reviews the entry of summary judgment de novo, to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enter., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007), and will affirm the entry of summary judgment if it is correct for any reason, *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

## I.    The Waiver Argument Is Not Supported By Arizona Law.

**¶11** Defendants' argument turns on the applicability and meaning of the following sentence: "[w]here the creditor can obtain a deficiency judgment he can also elect to waive the security under A.R.S. § 33-722 [under a deed of trust] and sue on the note." *Baker v. Gardner*, 160 Ariz. 98, 107 (1988) (supplemental opinion). Generally, "[w]aiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Russo v. Barger*, 239 Ariz. 100, 103 ¶ 12 (App. 2016) (citing *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co. Inc.*, 125 Ariz. 53, 55 (1980)). *Baker* did not specify or discuss what was required to "elect to waive the security" in this context.

**¶12** *Baker* consists of an opinion and a supplemental opinion. The *Baker* opinion held that, for a purchase-money mortgage on a single-family home secured by a note and a deed of trust (called the "security device"), "the holder of the note and security device may not, by waiving the security and bringing an action on the note, hold the maker liable for the entire unpaid balance." 160 Ariz. at 104. In granting reconsideration, the *Baker* supplemental opinion sought "to clarify and, hopefully, obviate any confusion" about the scope of the original opinion. *Id.* at 106. In doing so, the supplemental opinion concluded with the following three sentences:

> [1] Where the creditor chooses non-judicial foreclosure, he cannot obtain a deficiency judgment if the collateral is within

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

the class protected by the deed of trust anti-deficiency statute. [2] Where, however, the creditor chooses judicial foreclosure, he can obtain a deficiency judgment in all cases except those involving purchase money loans on the type of real property that the mortgage foreclosure statute describes. [3] Therefore, where the creditor can obtain a deficiency judgment he can also elect to waive the security under A.R.S. § 33-722 and sue on the note.

160 Ariz. at 107. Here, the first sentence does not apply because the parties agree the anti-deficiency statute does not apply. Similarly, the second sentence does not apply because Compass did not seek judicial foreclosure and the home equity loan was not a purchase-money loan. The third sentence, however, describes the facts of this case.[3]

¶13 Construing the third sentence, Defendants cite dictionary definitions and federal cases interpreting of the terms "sale," "waive" and "elect" in different contexts that they argue support their position. But suggesting possible meanings of these terms in other contexts does not resolve how *Baker* used them in this sentence. And Defendants cite no Arizona case construing this third sentence in a way that supports their position. Nor have Defendants shown that Compass was required to do something other than what it did in suing on the note. Nothing in the record suggests that Compass was involved in any way with the trustee's sale on the first-position loan. Moreover, Compass' rights in the second-position deed of trust were extinguished by the trustee's sale on the first-position loan, which occurred before Defendants were served in this lawsuit.

¶14 Defendants argue that Compass was required to do something affirmative and permanent to properly waive its security (like recording a signed release of its deed of trust). But Defendants conceded at oral argument before this court that, had Compass waited to sue on the note until the day after the trustee's sale on the first-position deed of trust, such a delay would have constituted a proper waiver. In essence, Defendants

---

[3] Compass repeatedly refers to this third sentence as dicta. As noted more than 20 years ago, the supplemental opinion in *Baker* "was obviously intended to be a guide for future conduct. Therefore, this court must follow the direction given by the supreme court." *Resolution Tr. Co. v. Segel*, 173 Ariz. 42, 44 (App. 1992). Accordingly, this court assumes without deciding that the third sentence applies in this case.

argue that Compass sued a few weeks too early but, had it waited to sue until after the trustee's sale on the first position, there would have been no issue. Defendants, however, provide no authority for this dichotomy. On this record, Defendants have not shown the superior court erred in concluding that Compass' conduct constituted a waiver of its rights under the deed of trust. *See Russo*, 239 Ariz. at 103 ¶ 12.

## II. Arizona Case Law Cited By The Parties Support The Entry Of Summary Judgment In Favor Of Compass.

**¶15** The Bennetts argue *Baker*, *Resolution Trust Co. v. Segel*, 173 Ariz. 42 (App. 1992) and *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343 (App. 1995) require a creditor to do something affirmative and final -- such as recording an express release of the deed of trust -- to waive the security interest and then sue on the note. These cases, however, show the contrary.

**¶16** In *Baker*, the homeowners of a single-family home defaulted on their senior and junior purchase-money loans. 160 Ariz. at 99. The senior lender noticed a trustee's sale; "[b]efore the sale, the [junior lenders] brought this action to recover the unpaid balance of the promissory note. They did not exercise their rights under the second trust deed." *Id*. *Baker* characterized this conduct by the junior lenders –- identical in relevant part to Compass' conduct here -- as a waiver. Indeed, although addressing the scope of the anti-deficiency statute that has no application here, *Baker* stated that the junior lenders, as "holder of the note and security device[,] may not, by waiving the security and bringing an action on the note," then seek to evade the force of the anti-deficiency statute. *Id*. at 104. Applying this *Baker* analysis here, by suing on the note and not exercising rights under the second-position deed of trust, Compass waived the security in the deed of trust.

**¶17** In *Segel*, the homeowners defaulted on their senior and junior loans. 173 Ariz. at 43. A senior lender noticed trustee's sales; before the sale, the junior lender sued the homeowner to recover the unpaid balance of the promissory note. 173 Ariz. at 43. The homeowner argued that "because the senior lender[] had noticed trustee's sales, and [the junior lender] had notice of the proceedings and an opportunity to join the proceedings, [the junior lender] should be prohibited under [the anti-deficiency statute] from bringing an action on the notes." *Id*. at 45. *Segel* rejected that argument, holding the junior lender's election of remedies was not affected by the actions of the senior lender, specifically noting that "the trustee's sales noticed by the senior lender did not constitute a choice by [the junior lender] to exercise its non-judicial foreclosure rights." *Id*. at 46. Applying

the *Segel* analysis here, Bank of America's action in noticing and concluding the trustee's sale on the first-position loan, without Compass' participation and at a time when Compass was suing on the second-position note, did not constitute an exercise of Compass' right to a trustee's sale or a waiver of Compass' right to sue on the second-position note. *See id.*

**¶18** *Tolliver* involved the non-judicial foreclosure of an apartment complex. 183 Ariz. at 345. The primary focus of *Tolliver* interprets A.R.S. § 12-1566(F), which does not apply here.[4] Accordingly, *Tolliver* does not address the issue to be resolved in this case. Other aspects of *Tolliver*, however, are instructive. In that case, the junior lender sued on the note after the completion of the senior lender's trustee's sale and without the junior lender releasing its lien before the trustee's sale by the senior lender. *Id*. at 344-45. *Tolliver* held that the completed trustee's sale by the senior lender, without the junior lender releasing its lien, did not constitute an election of remedies, meaning the junior lender was still able to sue on the note. *Id*. at 348-49. The junior lender in *Tolliver* did not have to do anything affirmative to make the election, and in fact was able to wait and see whether the trustee's sale would produce enough money to satisfy the lien. *Id*. Applying *Tolliver* here, even if Compass had waited to sue on the second-position note until after the completion of the trustee's sale on the first-position loan, it would not have waived its rights under the note. Moreover, Compass sued Defendants before the completion of the trustee's sale, meaning it clearly was not precluded from suing on the note.

**¶19** Because Arizona law does not require Compass to affirmatively and expressly release its deed of trust to "elect to waive the security" as a prerequisite to suing on the note, summary judgment in favor of Compass was proper.[5]

---

[4] Both parties concede that A.R.S. § 12-1566, addressing execution on judgments for debts secured by real property, does not apply to this case, where the issue is how a creditor may enforce a repayment obligation in seeking to a judgment. Indeed, *Tolliver* interpreted A.R.S. § 12-1566 to apply "only when a deed of trust has been foreclosed *and the creditor has obtained or can obtain a deficiency judgment*." 183 Ariz. at 346.

[5] Given this conclusion, this court need not address the parties' other arguments presented on appeal, including Compass' argument that A.R.S. § 33-722 requires only an election of remedies when both actions are pending simultaneously.

### III.    Attorneys' Fees And Costs On Appeal.

¶20        Both parties request attorneys' fees and costs incurred on appeal. Because Defendants are not the successful parties, their request is denied. Compass requests fees based on the language of the security agreement and A.R.S. § 12-341.01. Because Compass is the successful party on appeal, it is awarded reasonable attorneys' fees on appeal pursuant to the security agreement, and awarded its taxable costs on appeal, contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575 (App. 1994).

### CONCLUSION

¶21        The judgment in favor of Compass is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama