NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JUSTIN FRENCH, *Petitioner/Appellant,*

*v.*

ESTHER MONTIEL, *Respondent/Appellee.*

No. 1 CA-CV 22-0272 FC

FILED 01-24-2023

Appeal from the Superior Court in Maricopa County
No. FC2015-004790
The Honorable Glenn A. Allen, Judge

**AFFIRMED**

COUNSEL

Singer Pistiner, P.C., Scottsdale
By Jason Pistiner
*Counsel for Petitioner/Appellant*

Tiffany & Bosco P.A., Phoenix
By Kelly Mendoza
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Justin French (Father) appeals the superior court's order denying his petition seeking to modify parenting time and enforcement of the existing parenting plan. Because Father has shown no error, we affirm.

## BACKGROUND

¶2        Father and Esther Montiel (Mother) have one minor child. In 2016, the superior court entered orders establishing legal decision-making, parenting time, and child support (the parenting plan). In 2019, after Father filed a petition to modify parenting time and child support and a petition to enforce parenting time, those orders were modified by stipulation.

¶3        As set forth in that stipulation, Father and Mother share joint legal decision-making, and the child lives primarily with Mother. Father's parenting time "consist[s] of alternating Mondays and Wednesdays" and "alternating weekends." During the summer, defined as "from the last day of school until the first day of the next school year," each parent gets two weeks of uninterrupted parenting time, i.e., "vacation."

¶4        In April 2020, Father emailed Mother: "My summer vacation dates are July 3rd – 17th." The same day, Mother emailed back: "I'll do May 11–25." Father then waited until the day before Mother's chosen dates to email, raising "a discrepancy" between Mother's requested vacation dates and the terms of the parenting plan. The child remained with Mother throughout the chosen vacation.

¶5        Near the end of Mother's vacation, on May 20, Father filed a second "Petition To Modify Parenting Time and Child Support" and a "Petition To Enforce Parenting Time."[1] As a "substantial and continuing change," Father alleged that Mother's brother (Uncle), who had a criminal

---

[1]        Father also filed an "Emergency Motion for Post-Decree Temporary Orders Re: Parenting Time," but the parties stipulated to vacate the temporary orders hearing and proceeded on the main petition.

history, was living with Mother and the child. Father argued that Uncle "[wa]s a danger to [the child]." Father sought to suspend Mother's parenting time "until such time as she resides in a residence without [Uncle]" and requested that "parenting time be modified such that the parties exercise equal parenting time." Father also alleged that Mother had violated the parenting plan by using her two-weeks' uninterrupted parenting time before the school year had ended.

¶6            The following weekend, Mother and the child were exposed to COVID-19 at a family event. The child spent the weekend after with Father, during which time Mother began suffering symptoms and went to the hospital to be tested but was told not to quarantine. Mother did not inform Father and picked the child up Monday morning as scheduled. Later, Mother and the child both tested positive for COVID-19. Due to delays in re-testing, Father did not have parenting time with the child until August.

¶7            Dr. D.J. Gaughan, a psychologist, was appointed by the court as an evaluator. After interviews spanning from December 2020 to May 2021, Dr. Gaughan issued the comprehensive family evaluation (CFE) in August 2021, recommending equal parenting time and joint decision-making, with Father having the final say. In the meantime—sometime in June 2021—Uncle moved out of the home. Trial was then set for January 2022.

¶8            In the pretrial statement, Father "ask[ed] that the Court adopt the recommendations contained in the CFE," namely that (1) Father have the final say in legal decision-making and (2) the parents share equal parenting time. He also reasserted his position that "Mother violated Father's parenting time by improperly taking her 'summer' vacation when school was still in session." Mother maintained that modification was unnecessary, she did not violate the parenting plan, and Father's child support obligations should increase. Given the parenting time lost by Father because of the COVID-19 incident, "the parties agree[d] that Father w[ould] be entitled to an additional two weeks of uninterrupted parenting time during the Summer of 2022."

¶9            After an evidentiary hearing in January 2022, the court denied Father's petition to modify, finding there was no basis for modification because Uncle had moved out months before trial. The court denied Father's petition to enforce because "the parents [were] following the summer schedule" at the time, and in any case, Father waived any objection

because "[his] delay in responding to Mother was not reasonable" and "not made in good faith." Father timely appealed.[2]

## DISCUSSION

**¶10**     Father raises three issues on appeal. First, he argues the court erred in finding that there was no change in circumstances based on Uncle's previous co-residence with Mother and child. Second, he argues that the court erred in not making findings about the COVID-19 incident. Third, Father argues that Mother violated the existing parenting plan, which warranted a best-interests analysis even absent any change in circumstances.

**¶11**     We review the family court's rulings on legal decision-making and parenting time for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). An abuse of discretion occurs when the court commits an error of law in drawing a discretionary conclusion or when no competent evidence supports the court's decision. *Id.* We view the record in the light most favorable to sustaining the court's rulings, which we will affirm "if there is any reasonable supporting evidence." *Garlan v. Garlan*, 249 Ariz. 278, 280–81, ¶ 4 (App. 2020). We review the interpretation and application of statutes and court rules de novo. *State v. Godoy*, 244 Ariz. 327, 328, ¶ 7 (App. 2017).

## I.     The Court Did Not Err in Finding No Change in Circumstances

**¶12**     Father argues that the court erred in finding no change in circumstances warranting modification. We disagree.

**¶13**     In considering a change in parenting time, the trial court must determine "whether there has been a change in circumstances materially affecting the welfare of the child," and if so, whether a change in legal decision-making is in the child's best interests. *Black v. Black*, 114 Ariz. 282, 283 (1977); *see also Pridgeon v. Superior Court*, 134 Ariz. 177, 179 (1982) ("Only after the court finds a change has occurred does the court reach the question of whether a change in custody would be in the child's best interest."); A.R.S. § 25-403(A). "[T]he burden is on the moving party to satisfy the court that conditions and circumstances have so changed after the original decree as to justify the modification." *Burk v. Burk*, 68 Ariz. 305, 308 (1949). The

---

[2]     Father does not appeal the portion of the ruling modifying his child support obligations.

court has broad discretion to determine whether a change in circumstances justifies modification. *Pridgeon*, 134 Ariz. at 179.

¶14          Father relies on two events as a basis for modification: (1) Uncle's prior cohabitation with Mother and the child, which ended in June 2021; and (2) the Summer 2020 COVID-19 incident, which Dr. Gaughan relied on for his August 2021 CFE. We consider each in turn.

### A.     Mother's Prior Cohabitation with Uncle

¶15          Father argues that "the change of circumstances only must exist at the time a petition to modify is filed." For that reason, he argues the court erred in finding Father's "sole reason for his petition to modify was no longer an issue."

¶16          As support, Father relies on *Black*. There, a mother "had cohabited with a boyfriend for several months" before the father petitioned for modification, but the mother and boyfriend married before the modification hearing. 114 Ariz. at 284. Because the Court found that the cohabitation "did have a material effect upon the welfare of the children," *id.*, Father argues "[i]t did not make a difference whether such change of circumstances continued to exist up and through trial." His reasoning is flawed. In *Black*, the Court considered five circumstances and expressly declined to find any "one change of circumstance . . . totally sufficient." *Id.* It is also unclear if the Court disregarded the timing of the hearing when it found a change in circumstances. *See id.* In *Black*, the mother's boyfriend became her husband before trial, presumably making him a *more* permanent fixture in the children's lives. *See id.* Here, Uncle relocated before trial, removing the "circumstance" from which Father, in part, was seeking to protect the child.

¶17          The modification standard requires that there "*has been* a change in circumstances materially *affecting* the welfare of the child." *Black*, 114 Ariz. at 283 (emphasis added). This construction implies at least ongoing consequence, if not a persisting condition. *See, e.g., Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 15 (App. 2020) (noting the relocated child "*has and will continue* to engage in new activities, form new relationships, and face new challenges" (emphasis added)).

¶18          Father argues that requiring the condition to persist "would be nonsensical[,]" allowing "the opposing party to simply remedy the alleged change in circumstances the day before trial and render null and void all that occurred leading up to that point." Given different facts, there may very well be lasting consequences that warrant modification. Even so,

that determination is for the superior court to make based on the particularized facts. *See Pridgeon*, 134 Ariz. at 179.

¶19 On this record, Father did not substantiate his claim that "irreparable harm . . . may occur," or even that Uncle's co-residence would materially affect the child's welfare. As Dr. Gaughan testified, Father could reasonably prefer that his child not live with Uncle because of Uncle's criminal record. But as Dr. Gaughan recognized, none of Uncle's crimes involved children, domestic violence, or drugs. Nor was Uncle alone with the child. Moreover, Uncle lived in the home with Mother and the child for over a year without any alleged harm. Father concedes that Uncle moved out before trial.

¶20 Furthermore, the court did not abuse its discretion in finding that Uncle's prior co-residence "was no longer an issue," particularly when Father failed to allege how Uncle's presence in the home had negatively affected the child. In finding no substantial change in circumstances, the court applied the correct legal standard for modification.

### B. The COVID-19 Incident and Dr. Gaughan's Recommendations

¶21 Father next argues that the court erred by "not making any findings and ignoring [the COVID-19 incident], which formed the basis for Dr. Gaughan to recommend equal parenting time and Father having final say over legal decision-making." We disagree.

¶22 To begin, legal decision-making was not at issue because neither party included this request in their pleadings. Father instead relies on the fact that "the parties filed a joint pretrial statement that agreed that modification of legal decision-making authority was an issue in this matter." To be clear, Mother did not agree that legal decision-making authority was at issue. Rather, she included her position that "[t]he parties should *continue to share* joint legal decision-making" and "[t]here is no valid reason for Father to have final authority." (Emphasis added.)

¶23 Although "[t]he joint pretrial statement supersedes the pleadings and controls the subsequent course of the litigation," *Reyes v. Town of Gilbert*, 247 Ariz. 151, 159, ¶ 35 (App. 2019) (quotation and citation omitted), it does so by requiring the parties to disclose witnesses and evidence, and to identify what claims and defenses remain at issue, *see* Ariz. R. Fam. Law P. 76.1(f)–(h). As Father concedes, the pretrial statement serves

to limit and simplify the scope of the trial.[3] *See Walters v. First Fed. Sav. & Loan Ass'n of Phx.*, 131 Ariz. 321, 325 (1982); *Aetna Cas. & Sur. Co. v. Dini*, 169 Ariz. 555, 557 (App. 1991) (noting pretrial statement "narrow[s] the scope of the . . . issues to those which are truly legitimate").

**¶24**　　　Father also argues that legal decision-making was at issue because Mother stipulated to the CFE, and Dr. Gaughan then recommended a change to legal decision-making. But the CFE does not define the scope of litigation; it aids the court and the parties in resolving the issues. *See DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995); *see also* A.R.S. § 25-405(B) ("The court may seek the advice of professional personnel . . . ."). The court may have muddied the waters by issuing a generic order for "[l]egal decision-making recommendations," but Father cannot claim the benefit of this phrasing any more than he can attribute placing legal decision-making at issue to Mother.

**¶25**　　　Nonetheless, Father suggests that trial evidence about the COVID-19 incident placed legal decision-making at issue. Not so. The COVID-19 incident was relevant to properly pled issues: namely, parenting time enforcement, as Father argued Mother wrongfully interfered with his parenting time. The court also could have considered how the interference related to the best-interests factors if it moved forward with a modification. Moreover, Father did not move to amend the pleadings at trial or otherwise object when the judge repeatedly emphasized that "[w]e're not here to change legal decision-making because nobody is asking to do that."

**¶26**　　　Because Father could not raise new legal issues in the pretrial statement or at trial, nor could Dr. Gaughan place legal decision-making at issue, the court did not abuse its discretion in declining to consider modification of legal decision-making.

---

[3]　　　The cases cited by Father support this point. *See Norman v. Del Elia*, 111 Ariz. 480, 482 (1975) (excluding exhibit at trial that was "not listed in the pretrial statement"); *Calderon v. Calderon*, 9 Ariz. App. 538, 539–41 (1969) (excluding exhibit not produced pursuant to pretrial order, particularly as no explanation for delay was provided and "counsel [did not] move to have the pretrial order amended to enlarge the issues"); *Wright v. Demeter*, 8 Ariz. App. 65, 68 (1968) (excluding witness testimony "no[t] mention[ed] . . . in the pre-trial memorandum or pre-trial order"); *Loya v. Fong*, 1 Ariz. App. 482, 485–86 (1965) (finding error when court allowed testimony on issue eliminated in pretrial order).

¶27        We now consider Father's argument that he was entitled to findings on the COVID-19 incident to the extent that it related to his petition to modify parenting time. As Father notes, the COVID-19 incident occurred after he filed his petition to modify parenting time, so he could not have included it in the original petition. But Father could have sought leave to amend or moved to amend the pleadings at trial, and he did neither. *See* Ariz. R. Fam. Law P. 28 (a), (b).

¶28        In the pretrial statement, Father quoted Dr. Gaughan's findings relating to the COVID-19 incident. He did not contend that the incident—which occurred in the Summer of 2020—was a change in circumstances. Nor did Father argue, as he does for the first time on appeal, that Dr. Gaughan's findings based on the incident were "in and of [them]sel[ves]" a change in circumstances. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) (noting that an issue not raised "at the trial level" has been waived). At trial, Father's counsel argued that "the COVID issue could be both from an enforcement standpoint, but also as a substantial continuing change of circumstances [standpoint], being a medical decision that Mother (indiscernible) did not take into account *the best interest of the child*." (Emphasis added.) In addition, when the court observed that "if [it] d[id]n't get evidence on a substantial and continuing change, you don't pass go," Father did not argue that the COVID-19 incident was a change in circumstances warranting modification. In context, the court could have reasonably interpreted Father's argument as going to best interests under A.R.S. § 25-403. And because the court found no change in circumstance, it could not proceed to a best-interests analysis. *See Pridgeon*, 134 Ariz. at 180.

¶29        For these reasons, the court was within its discretion not to address the COVID-19 incident within the context of Father's petition to modify.[4] The court, therefore, did not err in terminating its analysis once it found Father had failed to show there had been a material change in circumstances.

## II.    The Court Did Not Err in Denying Father's Petition to Enforce

¶30        Alternatively, Father argues that Mother violated the existing parenting plan by taking her vacation time with the child prior to the

---

[4]        Although the court also did not address the COVID-19 incident within the context of its enforcement findings, we note that Father waived any such argument by failing to raise it on appeal.

conclusion of the school year. Citing A.R.S. § 25-411(A), he argues the court erred by not conducting a best-interests analysis. We disagree.

**¶31** In its order, the court found that "[t]he parties acknowledged that the child's normal school year was impacted by COVID-19, and that the regular school session ended in March 2020. It was not clear at trial if the child had mandatory classes . . . at home, but the parties did agree that they were exercising their parenting time under the summer schedule during the vacation in question." In any case, because Father did not object until the day before Mother's planned vacation was to begin, and 30 days after receiving notice of the planned dates, the court found Father had waived any contest.

**¶32** Father argues that "informing Mother her intended vacation dates violated the parties' orders" was "clear evidence that Father intentionally did not wish to abandon his right and instead wished to assert his rights under . . . the [parenting plan]." By emphasizing his objection, he altogether disregards the timing of that objection and his delay in raising it. As he conceded at trial, any earlier objection was "voiced to [Father's] attorney" and "[n]ot to Mother." Twenty-nine days of silence can be reasonably interpreted as acquiescence. *See Compass Bank v. Bennett*, 240 Ariz. 58, 60, ¶ 11 (App. 2016) (noting that waiver includes "such conduct as warrants an inference of . . . an intentional relinquishment [of a known right]" (citation and quotation omitted)). And even if Father's objection were reasonable, raising it the day before her scheduled vacation was not.

**¶33** Therefore, the court did not abuse its discretion in finding Father had waived his enforcement claim because Father's objection to Mother's vacation dates was untimely and "not made in good faith."[5]

---

[5] Given this conclusion, we need not reach Father's arguments that (1) Mother violated the parenting plan, and (2) a best-interests analysis was necessary. *See* A.R.S. § 25-411(A).

## CONCLUSION

¶34     For the reasons above, we affirm. Both parties request their attorney's fees incurred on appeal under A.R.S. § 25-324. Father's position on legal decision-making—i.e., that an issue first disputed in a pretrial statement is properly before the court—was unreasonable. In addition, Father's income is almost four times greater than Mother's. We, therefore, award Mother reasonable attorney's fees and costs on appeal subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:        HB